### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

JIMMIE JAMERSON, as
Personal Representative of the
ESTATE OF WILLIAM GRIFFIN

                Plaintiff,                        Case No.  1:09-cv-884
                                                        Honorable Robert J. Jonker

v

CITY OF MUSKEGON;
MICHELLE GEBBEN, individually;
TREVOR GERLACK, individually;
JEREMY VELICK, individually;
MIKE HAUG, individually;
TIM THOMPSON, individually; and
KATE STRAUSS; and
CASEY BRINGEDAHL, individually,

Joint and Severally,

                Defendants.

_____/

| | |
|---|---|
| Stephen R. Drew (P24323) | Patrick A. Aseltyne (P23293) |
| Adam C. Sturdivant (P72285) | Johnson, Rosati, LaBarge, Aseltyne & Field, P.C. |
| Drew, Cooper & Anding | Attorney for Defendants Gebben, Gerlack, Velick, |
| Attorney for Plaintiff |   Haug, Thompson, Strauss and Bringedahl |
| 125 Ottawa Avenue NW, Suite 300 | 303 S. Waverly Road |
| Grand Rapids, MI 49503 | Lansing, MI 48917 |
| (616) 454-8300 | (517) 886-3800 |

Allan C. Vander Laan (P33893)
Andrew J. Brege (P71474)
Cummings, McClorey, Davis & Acho, P.L.C.
Attorney for City of Muskegon
2851 Charlevoix Dr., SE
Suite 327
Grand Rapids MI 49546

_____/


### DEFENDANTS' ANSWER TO PLAINTIFF'S AMENDED COMPLAINT
### WITH AFFIRMATIVE AND OTHER DEFENSES

      **NOW COME** the Defendants Gebben, Gerlack, Velick,  Haug, Thompson, Strauss and

Bringedahl and in response to Plaintiff's Amended Complaint state as follows:

## JURISDICTIONAL ALLEGATIONS

1.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendment to the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343(a) (1), (2), (3), and (4) and the aforementioned statutory and constitutional provisions, as this action seeks redress for the violation of Plaintiff's constitutional and civil rights

**ANSWER:  Defendants neither admit nor deny this conclusion of law but leave Plaintiff to her proofs.**

2.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

**ANSWER:  Defendants neither admit nor deny this conclusion of law but leave Plaintiff to her proofs.**

3.     The claims brought herein are cognizable under the United States Constitution and 42 U.S.C. § 1923 and under Michigan Law.

**ANSWER:  Defendants deny as untrue.**

4.     Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

**ANSWER:  Defendants neither admit nor deny this conclusion of law but leave Plaintiff to her proofs.**

## PARTIES

5.      Plaintiff William Griffin now deceased, (hereinafter "Griffin" or "Decedent") was a 47 year old African American citizen of the United States, and was at all relevant times a resident of the City of Muskegon in the County of Muskegon, State of Michigan and is represented by his Estate's Personal Representative, Nancy McDonald (hereinafter "Plaintiff").

**ANSWER:  Defendants state no contest.**

6.      Defendant City of Muskegon (hereinafter "Defendant City") is a municipality or municipal corporation and/or governmental body, organized and existing under the constitution and laws of the State of Michigan and conducted business in the State of Michigan within the territorial limits of the United States District Court of the Western District of Michigan, and is authorized by law to maintain and operate the Muskegon Police Department.

**ANSWER:  Defendants admit.**

7.      Defendant Michelle Gebben (hereinafter "Defendant Gebben") at all relevant times was acting within the scope and course of her duties as a police officer of the Muskegon Police Department and an agent and/or employee of the City of Muskegon.

**ANSWER:  Defendants admit.**

8.      Defendant Trevor Gerlach (hereinafter "Defendant Gerlach") at all relevant times was acting within the scope and course of his duties as police officer of the Muskegon Police Department and an agent and/or employee of the City of Muskegon.

**ANSWER:  Defendants admit.**

9.      Defendant Jeremy Velik (hereinafter "Defendant Velik") at all relevant times was acting within the scope and course of his duties as a police officer of the Muskegon Police Department and an agent and/or employee of the City of Muskegon.

**ANSWER:  Defendants admit.**

10.     Defendant Mike Haug (hereinafter "Defendant Haug") at all relevant times was acting within the scope and course of his duties as a police officer of the Muskegon Police Department and an agent and/or employee of the City of Muskegon.

**ANSWER:  Defendants admit.**

11.     Defendant Tim Thompson (hereinafter "Defendant Thompson") at all relevant times was acting within the scope and course of his duties as a police officer of the Muskegon Police Department and an agent and/or employee of the City of Muskegon.

**ANSWER:  Defendants admit.**

12.     Defendant Kate Strauss (hereinafter "Defendant Strauss") at all relevant times was acting within the scope and course of her duties as a police officer of the Muskegon Police Department and an agent and/or employee of the City of Muskegon.

**ANSWER:  Defendants admit.**

13.     Defendant Casey Bringedahl (hereinafter "Defendant Bringedahl") at all relevant times was acting within the scope and course of his duties as a police officer of the Muskegon Police Department and an agent and/or employee of the City of Muskegon.

**ANSWER:  Defendants admit.**

14.     At all relevant times, Defendants were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and the City of Muskegon and/or the Muskegon Police Department.

**ANSWER:  Defendants are without sufficient information upon which to form a belief as to the truth of the allegations therein and neither admit nor deny but leave Plaintiff to her proofs.**

**FACTUAL ALLEGATIONS**

15.     Plaintiff realleges and incorporates by reference the allegations contained in the previous

        paragraphs.

**ANSWER:  Defendants incorporate their answers to the allegations in the previous**

**paragraphs as if the same were fully here set forth.**

16.     On or about October 1, 2007, at or around 6:46 p.m., a local homeowner placed a phone

        call to the Muskegon Police Department for an unwanted person that she wanted to leave,

        located at 1920 Mans Street, Muskegon, Michigan.

**ANSWER:     Upon information and belief, Defendants admit and also state that this**

**was not the only call to dispatch by the homeowner that evening.**

17.     The homeowner gave the Muskegon Police Department a detailed description of the

        unwanted person, which included that he was an African American in his fifties, wearing

        blue jean pants, a red hat, and black shirt and was in possession of a cane.

**ANSWER:     Upon information and belief, Defendants admit and also state that this**

**was not the only description given by the homeowner that evening.**

18.     On the aforementioned date and time, Defendants Gerlach and Gebben responded to said

        phone call and arrived at the scene at or around 7:04 p.m.

**ANSWER:     These Defendants admit.**

19.     William Griffin was wearing blue jeans, a blue sweatshirt, with no hat on, and was not in

        possession of a cane.

**ANSWER:     These Defendants admit that for at least a portion of the evening this is an**

**accurate description of Mr. Griffin's attire.**

20.     When Defendant Gebben arrived, the homeowner informed her that William Griffin was not

        the person she referred to in her phone call.

**ANSWER:      Upon information and belief, these Defendants admit.**

21.     Defendants Gerlach and Gebben searched the outside of the house for the unwanted

person.

**ANSWER:      These Defendants admit that they were searching for this person when**

**they encountered Mr. Griffin.**

22.     Defendant Gerlach saw Decedent in a window and asked him to come outside of the house.

In compliance with Defendant Gerlach's request, Griffin exited the house near Defendant

Gebben.

**ANSWER:      These Defendants admit.**

23.     Griffin asked Defendant Gebben about the location of the unwanted person.

**ANSWER:  These Defendants admit.**

24.     Griffin tried to re-enter the house under the impression that he was not under arrest and

free to leave, at which point Defendants Gebben and Gerlach forced Griffin against the side

of the house.

**ANSWER:      These Defendants are without sufficient information as to what was Mr.**

**Griffin's impression.  He had obviously lied to the officers about his identity and had**

**outstanding arrest warrants, so there is a good possibility that he was attempting to**

**avoid them.  There was physical contact with Mr. Griffin after he refused to obey a**

**lawful command and pushed up against an officer.**

25.     Defendant Gebben whipped Griffin around by the belt.

**ANSWER:      These Defendants admit that reasonable force was used in an effort to**

**subdue Mr. Griffin in response to his active physical resistance.**

26.     Defendant Gerlach grabbed Griffin from behind and Defendant Gebben, for the very

purpose of causing harm, repeatedly sprayed OC onto Griffin's face and chest at a very

close range, while he was on the ground face down, with pressure being applied to his back area.

**ANSWER:  These Defendants admit that they were using the reasonable degree of force necessary under the totality of the circumstances to subdue Decedent.  The Defendants deny that Decedent was sprayed more than two times.  They also deny that he was sprayed while face down on the ground or at a close range, with pressure being applied to his back, as alleged, for the reason that these statements are not true.**

27.     Defendant Gerlach instructed Defendant Gebben to spray Griffin multiple times.

**ANSWER:  These Defendants deny for the reason that it is not true.**

28.     Defendants, Gebben and Gerlach, proceeded to forcefully restrain and handcuff Griffin on the ground by positioning themselves on top of him even though he insisted upon his innocence and was indicating or trying to indicate that he could not breathe.

**ANSWER:  These Defendants admit that they used reasonable force to restrain and handcuff Mr. Griffin and that this force was reasonable under the totality of the circumstances.  The Decedent had on several occasions given the officers false names, identifying himself  as "Mr. James," "Mr. Johnson" or  "Melvin Jameson," all of which were false; and that, although he denied having warrants outstanding for his arrest, the truth is that Mr. Griffin had multiple warrants outstanding for his arrest.  Further, he had physically resisted and opposed the officers' efforts to arrest him and had engaged in an escalating physical confrontation with both officers.  Otherwise, these Defendants deny any wrongdoing alleged, as this is not true.**

29.     Defendants refused to allow Griffin room to move.  Any attempt Griffin made to be compliant and/or any attempt he made to catch his breath was met with unwarranted force and hostility.

**ANSWER:  These Defendants admit that they used reasonable force to restrain and handcuff Mr. Griffin and that this force was reasonable under the totality of the circumstances.  The Decedent had on several occasions given the officers false names, identifying himself as "Mr. James," "Mr. Johnson," or "Melvin Jameson," all of which were false; and that, although he denied having warrants outstanding for his arrest, the truth is that Mr. Griffin had multiple warrants outstanding for his arrest.  Further, he had physically resisted and opposed the officers' efforts to arrest him and had engaged in an escalating physical confrontation with both officers.  Otherwise, these Defendants deny any wrongdoing alleged, as this is not true.**

30.  Defendant Gebben, notwithstanding his knowledge Griffin was having complications breathing, repeatedly pushed Griffin's head into the ground.

**ANSWER:  This Defendant denies that she had any knowledge that Mr. Griffin was having complications breathing beyond what one might normally expect in a physical confrontation, such as occurred in this instance.  Defendants further point out that the officers did seek to secure Decedent in the best manner possible given the fact that he had repeatedly bolted from them and thrown them off of him during the struggle. Defendants deny any use of excessive force.**

31.  Defendant Gerlach excessively and without cause, need, or provocation, struck Griffin with a flashlight several times in the torso and at least once on the outer leg.

**ANSWER: This Defendant denies the allegation of excessive force without cause, need or provocation.  He admits that he did strike Decedent in the area of the common peroneal nerve, which is an accepted tactic to gain control over a subject who is physically resisting.  He also admits that he attempted to force Decedent to comply and reduce his extreme level of resistance to the officers' legitimate efforts to bring him**

**under control. Defendant denies that Decedent was struck several times in the torso area, as alleged, for this is not true and is not supported by several pieces of evidence, including the autopsy report.**

32. Defendants Thompson, Strauss, Bringedahl, Velik, and Haug with deliberate speed rushed to the scene with the use of their sirens and flashing lights and arrived at or around 7:11 p.m.

**ANSWER: Defendants admit.**

33. Defendants Thompson and Strauss and/or other Defendants lifted Griffin off the ground while handcuffed and transported him to the police cruiser, where he was made to "sit tight" despite his statements, pleas and requests for assistance indicating an inability to breathe and/or other serious medical need.

**ANSWER: These Defendants admit that they helped the Decedent off the ground using an appropriate lifting technique after allowing him to recline on his side to assist him in regaining his composure. They then walked with him to a squad car. He made no claim of having a serious medical need to them and they did not deny him access to assistance or medical care. Defendants deny any suggestion of wrongdoing contained in this paragraph for it is not true.**

34. At the same time and place, Defendant Gerlach, who had been slightly exposed to the OC was told to go immediately to the hospital to be decontaminated and examined for injury;

**ANSWER: Defendants admit that Officer Gerlach suffered a separated shoulder as a result of Decedent assaulting him and the struggle to subdue Decedent, and that he was told to go to the hospital to check out this apparent injury.**

35. At the same time and place, Griffin repeatedly begged, pled, and asked that he be given medical attention, including but not limited to, that he be brought to a local hospital

because he could not breathe and was dying.  Defendants deliberately failed and refused to do so and with a deliberate manner drove slowly to the booking station, ignoring his pleas for medical attention and assistance.

**ANSWER:   Defendants deny that anyone drove slowly to the booking station or that Decedent's pleas for medical attention and assistance were ignored, for these allegations are not true.  Further, during this time, Decedent continued to lie to the officers about his identity and lie about there being no warrants outstanding for his arrest.   Defendants admit that Decedent made certain statements which were consistent with someone who had been sprayed by OC spray in terms of the gravity of his situation, and that certain officers told him that the condition would pass as soon as the spray wore off.**

36.    Decedent William Griffin was intentionally and recklessly denied by the Defendants the removal of the OC spray, a washing of his face and any and all requested medical care and attention, and instead was taken to the Muskegon Police Department Station for booking and detention.

**ANSWER:   Defendants admit that he was taken to the police department for identification and the preparation of documents in conjunction with his recent crimes.  Defendants deny that they intentionally and recklessly denied the removal of the OC spray or deprived him of the ability to wash his face or that they deliberately denied his request for medical care in the face of a known serious medical condition, for these allegations are not true.**

37.    As a proximate result of some or all of the above actions, Mr. Griffin sustained physical and mental injuries prior to his death.

**ANSWER: Defendants are without sufficient information upon which to form a belief as to the truth of the allegations therein and neither admit nor deny but leave Plaintiff to her proofs.**

38.     In whole or in part, as a result of some or all of the above actions of the Defendants, Mr. Griffin died at the Defendant City of Muskegon and Muskegon Police Department's booking area, after again pleading for help during the process, which assistance was repeatedly ignored and denied by the Defendants.

**ANSWER: Defendants deny as untrue.  In further answer, Defendants would point out that officers summoned medical assistance when it became apparent that an emergency had occurred and Decedent was immediately treated and transported to the Hackley Hospital where he died as a result of pre-existing conditions having nothing to do with the administration of OC spray.  Included among these conditions were an enlarged heart, pulmonary emphysema, the presence of toxic levels of diphenhydramine (Benadryl), acute and chronic cocaine use, and pneumoconiosis.**

<u>COUNT I</u>
<u>42 U.S.C. § 1983 - EXCESSIVE FORCE</u>
<u>INDIVIDUAL DEFENDANTS</u>

39.     The above paragraphs are incorporated by reference as if fully stated herein.

**ANSWER: Defendants incorporate their answers to the allegations in the previous paragraphs as if the same were fully here set forth.**

40.     The aforementioned acts by individual Defendants were committed under color of state law. Said acts were committed by Defendants with callous and/or reckless disregard and/or with deliberate indifference, and deprived Decedent William Griffin of the following clearly established and well-settled rights, privileges and immunities under the laws and Constitution of the United States:

a)      Freedom from the use of excessive and unreasonable force in violation of Decedent's Fourth Amendment rights;

b)      Freedom from seeking and enjoying equal rights, privileges and immunities of citizens of the United States and the State of Michigan, including such rights as free speech, assembly, association and movement, and due process; and

c)      Otherwise violating the rights of the Decedent William Griffin.

**ANSWER: (a. – c.)  Defendants deny any wrongdoing or the violation of Decedent's rights as alleged for the reason that these allegations are not true.**

41.     Defendants subjected the Decedent, William Griffin, to these deprivations of rights maliciously and/or by acting with callous and/or reckless disregard, and with deliberate indifference as to whether Decedent's rights would be violated by his actions.

**ANSWER:  Defendants deny any wrongdoing or the violation of Decedent's rights as alleged for the reason that these allegations are not true.**

42.     As a direct and proximate result of Defendants' actions, Decedent William Griffin suffered mental and physical pain and suffering prior to his death.

**ANSWER: Defendants deny any wrongdoing or the violation of Decedent's rights as alleged for the reason that these allegations are not true.**

43.     In whole or in part, as a direct and proximate result of Defendant's actions, Decedent William Griffin died.

**ANSWER:  Defendants deny any wrongdoing or the violation of Decedent's rights as alleged for the reason that these allegations are not true.**

44.     As a direct and proximate result of Defendants' actions, Decedent was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

**ANSWER: Defendants deny any wrongdoing or the violation of Decedent's rights as alleged for the reason that these allegations are not true.**

**COUNT II**
**42 U.S.C. § 1983 –DENIAL OF MEDICAL ATTENTION**
**INDIVIDUAL DEFENDANTS**

45.    The above paragraphs are incorporated by reference as if fully stated herein.

**ANSWER:   Defendants incorporate their answers to the allegations in the previous**
**paragraphs as if the same were fully here set forth.**

46.    Defendants had the duty and/or responsibility to seek or obtain medical treatment for Plaintiff
when it became clear that he had a serious medical need.

**ANSWER:  Defendants neither admit nor deny this conclusion of law, but would leave**
**Plaintiff to her proofs.   Further, should an answer be required by a court, then**
**Defendants state that when it became clear that Decedent had a serious medical need,**
**treatment was sought and obtained.**

47.    The Defendants demonstrated deliberate indifference to the Decedent in delaying medical care
when William Griffin's serious medical need was evident under the circumstances.

**ANSWER:  Defendants deny any wrongdoing or the violation of Decedent's rights as**
**alleged for the reason that these allegations are not true.**

48.    As a direct and proximate result of Defendants' actions, Decedent William Griffin suffered
mental anguish, anxiety, humiliation and embarrassment, psychological and/or emotional
distress, physical pain and suffering, and death.

**ANSWER:  Defendants deny any wrongdoing or the violation of Decedent's rights as**
**alleged for the reason that these allegations are not true.**

**COUNT III**
**42 U.S.C. § 1983 – MUNICIPAL DEFENDANT**

49.    The above paragraphs are incorporated by reference as if fully stated herein.

**ANSWER:   Defendants incorporate their answers to the allegations in the previous paragraphs as if the same were fully here set forth.**

50.     This count is alleged against Defendant City of Muskegon.

**ANSWER:  Defendants admit.**

51.     The City of Muskegon has the ultimate responsibility and authority to train and supervise officers of the Muskegon Police Department in appropriate use of department issued OC and/or the requested need for medical care, and as a matter of acts, custom, policy and and/or practice, failed to do so with deliberate indifference.

**ANSWER:  These Defendants make no response since the allegation does not apply to them, but would leave Plaintiff to her proofs.**

52.     Defendant City of Muskegon, had a custom, practice and/or policy and in that regard failed to adequately train and/or supervise officers of the Muskegon Police Department in the proper and positioned use of the OC spray and the requisite need for medical care, which led to a violation of the Decedent William Griffin's rights which deprived him of his Constitutional rights under the Fourth Amendment of the United States Constitution at all times material to this complaint.

**ANSWER:  These Defendants make no response since the allegation does not apply to them, but would leave Plaintiff to her proofs.**

53.     By these actions, Defendant City of Muskegon, as a matter of acts, custom, policy and practice, have deprived the Decedent William Griffin of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

**ANSWER:  These Defendants make no response since the allegation does not apply to them, but would leave Plaintiff to her proofs.**

54.     Defendant City of Muskegon's policy and practice of failing to hire minorities as police officers of the Muskegon Police Department has resulted in a desparate impact in the street practices of said officers, in violation of the rights of the Decedent William Griffin and/or other African Americans.

**ANSWER: These Defendants make no response since the allegation does not apply to them, but would leave Plaintiff to her proofs.**

55.     As a direct and proximate result of Defendants' actions, Decedent suffered mental anguish, anxiety, humiliation and embarrassment, psychological and/or emotional distress, physical pain and suffering, and death.

**ANSWER: These Defendants make no response since the allegation does not apply to them, but would leave Plaintiff to her proofs.**

<u>**SUPPLEMENTAL STATE LAW CLAIMS**</u>

<u>**COUNT IV**</u>
<u>**GROSS NEGLIGENCE**</u>
<u>**ALL DEFENDANTS**</u>

56.     The above paragraphs are incorporated by reference as if fully stated herein.

**ANSWER: Defendants incorporate their answers to the allegations in the previous paragraphs as if the same were fully here set forth.**

57.     Defendants owed the Decedent a duty to use due care.

**ANSWER: Defendants neither admit nor deny this conclusion of law but leave Plaintiff to her proofs.**

58.     Defendant violated that duty in the following aforementioned manners.

**ANSWER: Defendants deny as untrue.**

59.     As a direct and proximate result of the breach by Defendants, the Decedent died.

**ANSWER: Defendants deny as untrue.**

60.     Plaintiff, on behalf of the estate and all in individuals entitled to damages under the wrongful death act, request all damages that are fair and just under the circumstances, including, without limitation, the following:

a)      Reasonable hospital, medical and/or funeral expenses;

b)      Reasonable compensation for pain and suffering the Decedent experienced while he was conscious during the time between his injury and his death; and

c)      Losses suffered by the next of kin as a result of the Decedent's death, including but not limited to the following:

   i.     Loss of financial support;

   ii.    Loss of services;

   iii.   Loss of gifts and other valuable gratuities;

   iv.    Loss of society and companionship; and

   v.     Other miscellaneous losses.

**ANSWER: (a. – c.)  Defendants are without sufficient information upon which to form a belief as to the truth of the allegations therein and neither admit nor deny but leave Plaintiff to her proofs.**

61.     At all relevant times, Defendants were acting in the course and scope of their employment with Defendant City of Muskegon and within the scope of their authority as law enforcement officers of the Muskegon Police Department, a division of Defendant City of Muskegon.

**ANSWER:  Defendants are without sufficient information upon which to form a belief as to the truth of the allegations therein and neither admit nor deny but leave Plaintiff to her proofs.**

62.      Defendants breached the duties owed to Decedent William Griffin and were grossly negligent as that term is used and defined in M.C.L. 691.1407(2) (c), when they conducted themselves by actions described above, said acts having been committed with reckless disregard for Decedent's health, safety, Constitutional and/or statutory rights, and with a substantial lack of

concern as to whether an injury would result.  Duties owed to the Decedent William Griffin include but are not limited to:

a)      The duty to use verbal means such as advice, warning or persuasion before resorting to force;

b)      The duty to refrain from using force where force was not necessary;

c)      The duty to exhaust all reasonable alternatives before using force; including but not limited to requesting assistance and / or backup before utilizing force as was necessary and reasonable under the circumstances;

d)      The duty to use only such force as was necessary and reasonable under the circumstances;

e)      The duty to exercise restraint in difficult situations and to analyze the situation and react in a professional manner;

f)      The duty to not deliberately ignore and recklessly disregard the known procedures regarding the means and methods and applications of pepper spray (OC), the acts of detaining a person that may affect their ability to breathe, and their pleas for assistance when they are unable to breathe because of the aforementioned reckless and other acts that recklessly disregarded said procedures; and

g)      Other duties to be identified.

**ANSWER: (a. – g.)  Defendants deny that they were grossly negligent as alleged or that they otherwise conducted themselves as alleged in violation of Decedent's health, safety, constitutional or other rights, or that they violated the duties listed for the reason that the allegations are not true.**

63.     Contrary to the duties owed to Decedent William Griffin at the above time and place, Defendants were grossly negligent and breached said duties, committing one or more of the following acts and/or omissions which proximately caused the death of the Decedent William Griffin:

a)      The use of OC pepper spray against an unresisting arrestee;

b)      The use of OC pepper spray at close range against an unarmed suspect;

c)      The use of OC pepper spray while one is face down with pressure being applied on the face, neck and/or back;

d)      Placing one face down with pressure on their back affecting their ability to breathe;

e)      Failure to ameliorate in a timely fashion the effects of the OC pepper spray;

f)      The use of a department issued flashlight as a weapon;

g)      Failure to provide medical care where there was an obvious need; and

h)      Acts and/or omissions otherwise intended to endanger the Decedent William Griffin.

**ANSWER: (a. – h.)  Defendants deny that they were grossly negligent as alleged or that they otherwise conducted themselves as alleged in violation of Decedent's health, safety, constitutional or other rights, or that they violated the duties listed for the reason that the allegations are not true.**

64.     As a direct and proximate result of Defendant's gross negligence, Decedent William Griffin suffered injuries and death as outlined above.

**ANSWER:  Defendants deny as untrue.**

**COUNT V**
**ASSAULT & BATTERY**
**DEFENDANT GEBBEN & DEFENDANT GERLACH**

65.     The above paragraphs are incorporated by reference as if fully stated herein.

**ANSWER:  Defendants incorporate their answers to the allegations in the previous paragraphs as if the same were fully here set forth.**

66.     Defendants committed, or acted in concert to commit, acts which caused the Decedent William Griffin to be apprehensive that Defendants would subject him to an imminent battery and/or intentional invasions of his rights to be free from offensive and harmful contact, and said conduct demonstrated that the Defendants had a present ability to subject the Decedent to an immediate, intentional, offensive and harmful touching. Decedent did not consent to such conduct, which caused injury, damage, loss, and/or harm.

**ANSWER:  These Defendants deny this allegation as untrue and further point out that Decedent's own conduct led to the physical contact or threatened physical contact between the parties.  Defendant officers had probable cause to arrest Decedent that evening and to use reasonable force to do so.  There is a privilege under the law that bars this claim.  Moreover, at the time of the arrest, there were several warrants outstanding for Decedent's arrest.  The fact that Decedent was being arrested was entirely consistent with the mandate in those warrants.  Further, Defendants deny any allegations of wrongdoing therein.**

67.     The acts described herein constitute assault and battery, actionable under the laws of the State of Michigan.

**ANSWER:  These Defendants deny as untrue.**

68.     Defendants committed, or acted in concert to commit, acts, which resulted in harmful or offensive contact with the body of the Decedent.  Decedent did not consent to the contact, which caused injury, damage, loss, and/or harm.

**ANSWER:   These Defendants deny that they were grossly negligent as alleged or that they otherwise conducted themselves as alleged in violation of Decedent's health, safety, constitutional or other rights, or that they violated the duties listed for the reason that the allegations are not true.**

**COUNT VI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**ALL DEFENDANTS**

69.     The above paragraphs are incorporated by reference as if fully stated herein.

**ANSWER:  Defendants incorporate their answers to the allegations in the previous paragraphs as if the same were fully here set forth.**

70.    The acts described herein constitute extreme and outrageous conduct against Decedent William Griffin and were without privilege.

**ANSWER:  Defendants deny as untrue.**

71.    Defendants committed, or acted in concert to commit, acts which intended to cause Decedent William Griffin to suffer emotional distress.

**ANSWER:  Defendants deny as untrue.**

72.    Decedent William Griffin suffered severe emotional distress and the outrageous conduct of the Defendants was in whole or in part a cause of the emotional distress suffered by Decedent William Griffin under the circumstances.

**ANSWER:  Defendants deny as untrue.**

73.    Defendant's outrageous conduct constitutes the intentional infliction of emotional distress and is actionable under the laws of the State of Michigan

**ANSWER:  Defendants deny as untrue.**

<u>DAMAGES</u>

74.    The above paragraphs are incorporated by reference as if fully stated herein.

**ANSWER:   Defendants incorporate their answers to the allegations in the previous paragraphs as if the same were fully here set forth.**

75.    As a direct and proximate result of Defendants' actions stated above, Decedent William Griffin suffered serious mental anguish, anxiety, humiliation and embarrassment, emotional distress, a sense of outrage, and/or loss of social pleasure and enjoyment.

**ANSWER:  Defendants deny as untrue.**

76.    As a direct and proximate result of Defendants' actions stated above, Decedent William Griffin died on October 11, 2007.

**ANSWER:  Defendants deny as untrue.**

77.     The acts and conduct of the Defendants alleged in the above stated counts and causes of action constitute violations of the common and/or statutory laws of the State of Michigan, and the United States District Court has supplemental jurisdiction to hear and adjudicate said claims.

**ANSWER:  Defendants deny as untrue.**

**WHEREFORE**, the Defendants respectfully request that the Court dismiss the Plaintiff's Complaint and enter judgment in favor of the Defendants, together with an award of costs and attorney fees wrongfully incurred.

<u>**RELIANCE ON JURY DEMAND**</u>

Defendants give notice that they intend to rely upon Plaintiff's Demand for Jury Trial filed herein.

<u>**AFFIRMATIVE AND OTHER DEFENSES**</u>

Defendants hereby give notice that they may rely upon the following Affirmative and other defenses at or before the time of trial:

1.   The individual officers are entitled to qualified immunity regarding the federal claims plead against them.

2.   The individual officers are also entitled to governmental immunity regarding the state law claims plead against them.

3.   Plaintiff's claims against all Defendants are barred by the provisions of MCL 600.2955a, because he had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, Plaintiff was 50% or more the cause of the event that resulted in his death.

4.   In the alternative, Plaintiff's Decedent's own intentional, willful, wanton, reckless and/or negligent conduct caused or contributed to his damages, if any, and any such damages must be reduced accordingly.

5.   Plaintiff has failed to state a claim upon which relief can be granted.

6.   The Defendant police officers are entitled to rely upon the statutory privilege allowing them to arrest a person under the circumstances presented in this case.  MCL 764.15

7.   Defendants reserve the right to raise such other affirmative defenses as the same may become known during the course of discovery.

**WHEREFORE**, the Defendants respectfully request that the Court dismiss the Plaintiff's Complaint and enter judgment in favor of the Defendants, together with an award of costs and attorney fees wrongfully incurred.

Respectfully submitted,

JOHNSON, ROSATI, LABARGE, ASELTYNE & FILED, P.C.


/s/ Patrick A. Aseltyne
Patrick A. Aseltyne
Attorney for Defendants
303 S. Waverly Road
Lansing, MI 48917
(517) 886-3800
P23293
PAseltyne@jrlaf.com

Dated:  February 12, 2010

**Proof of Service**

I hereby certify that on February 12, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record listed herein.

Respectfully submitted,

JOHNSON, ROSATI, LABARGE,
ASELTYNE & FILED, P.C.


/s/ Patrick A. Aseltyne
Patrick A. Aseltyne
Attorney for Defendants
303 S. Waverly Road
Lansing, MI 48917
(517) 886-3800
P23293
PAseltyne@jrlaf.com

Dated: February 12, 2010